CHARLES LLENZA, Plaintiff and Appellee, v. BANCO DE PONCE, JOSÉ MOLINA, MANUELA NIEVES MOLINA ET AL., Defendants, and the first three Appellants; COMMONWEALTH OF PUERTO RICO, Intervener and Appellee.

No. 12532. Decided June 26, 1962.

*L. E. Dubón, A. Torres Braschi,* and *R. Ruiz Sánchez* for appellants. *Harry B. Llenza* and *Domingo Toledo Alamo* for appellee. *Hiram R. Cancio, Secretary of Justice, Arturo Estrella,* and *Stanley R. Segal, Assistant Secretaries of Justice,* for intervener.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

Mr. Justice Santana Becerra delivered the opinion of the Court.

By deed No. 35, executed in Río Piedras on March 5, 1948 before Notary Edrulfo Astacio, partners Miguel Angel Dávila, Charles Llenza, and Juan R. Dávila dissolved the general mercantile partnership "Dávila & Llenza." Among the clauses of dissolution it was agreed as follows:

"Eighth.—Whereas, the appearing parties Miguel Ángel Dávila and Juan R. Dávila have assumed the obligation to pay in full the debts and obligations which constitute the liabilities of Mercantil Dávila & Llenza, exonerating and liberating Charles Llenza from the full or partial payment thereof, with the exception of the ten thousand dollars ($10,000) of capital and interest as of the thirty-first day of January of the present year, of the mortgage credit in favor of Celso J. Ortiz, which encumbers the two-story building on Arsuaga Street of Río Piedras which was awarded to Charles Llenza, and that the latter assumes the obligation to pay the same, and excepting further the commissions, fees and court expenses which it may be necessary to incur in the collection of the accounts receivable entered or not in the books, in the manner and with the limitations already imposed and agreed upon, the appearing parties hereby agree, solely for the purpose of securing to Charles Llenza the payment of such debts and obligations, that the seven lots of Dávila y Llenza Development described under letters B, C, D, E, F, G, and I of the second paragraph of the recital hereof, shall answer for the payment of one third of the

debts and liabilities of Mercantil DÁVILA & LLENZA, thereby constituting a collateral security which shall subsist until the creditors are paid or until such time as the creditors accept any other security from MIGUEL ÁNGEL DÁVILA and JUAN R. DÁVILA. However, it is expressly agreed that the security stipulated hereinabove on the lots described in the SECOND paragraph of the recital hereof shall not constitute a real charge on the said lots, so that MIGUEL ÁNGEL DÁVILA and JUAN R. DÁVILA may sell, assign, and convey the said lots or any of them free from liens and give them as direct or collateral security to banking institutions, provided the proceeds of the operation carried out guarantee proportionally to CHARLES LLENZA the payment of the debts and obligations referred to in this clause, on condition that in order to sell, assign, encumber, or mortgage these lots, the consent of CHARLES LLENZA shall be necessary in the sale or mortgage deed, which consent shall be limited to the application of the proceeds of the sale or mortgage to pay off solely and exclusively the debts mentioned hereinabove, it being further agreed that after the debts are paid off such consent shall not be necessary."

According to the history in the deed, the seven lots mentioned in the preceding clause were awarded to partners Miguel Angel Dávila and Juan R. Dávila together with other assets, in joint ownership and in a proportion of one half for each of them. It was set forth that any deficiency found in the income-tax return of the mercantile partnership for 1946 would be prorated in equal parts among the partners at the time such deficiency becomes payable, and the same agreement was made with respect to the 1947 return and up to January 31, 1948. It was stated that upon liquidation of the partnership reserves for $22,060.61 had been included in the liabilities for the payment of income-tax deficiencies for 1940 to 1945, in the understanding that in the event such deficiencies are payable the full amount thereof would be for the account of partners Miguel Angel Dávila and Angel R. Dávila, jointly and solidarily, and that partner Charles Llenza would not be bound to contribute to the payment thereof, in view of the reserves made.

Five of the seven lots mentioned in the preceding eighth clause which are the object of this suit are Nos. 17, 18, 19, 31, and 38 of "Dávila y Llenza" development in Hato Rey. According to the deed of dissolution and the history of the registry, these lots were segregated from property No. 69, having an area of 43,199.17 square meters, situated in the ward of Hato Rey, which is subject to a mention of easement of spring or source of water and to restrictive building conditions. According to the first inscription, the five lots were recorded in joint ownership, one half for each of them, in favor of Miguel Angel Dávila and Juan R. Dávila, by way of adjudication upon dissolution of the partnership. It was set forth in the first inscription that the adjudication was made "subject to the conditions appearing from deed number thirty-five, executed in Río Piedras on the fifth day of March nineteen hundred and forty-eight, before Notary Edrulfo Astacio, which is fully recited in the sixth inscription of property seven thousand one hundred eleven, at folio one hundred sixty, volume one hundred ninety-five of Río Piedras."

According to the second inscription, these lots were recorded as a result of a judicial sale in favor of José Molina, married to Manuela Nieves, as purchaser at the public sale, it having been set forth in that inscription that the same were subject to a mention of easement of spring or source of water and restrictive building conditions and to certain attachments entered. Regarding lots 19, 31, and 38, on June 21, 1950 an attachment was entered in the registry in favor of The People of Puerto Rico to answer for income taxes for the years 1940 to 1948, José Molina having recorded subject to those attachments. On September 16, 1954 the said attachments for income taxes were cancelled in full by lapse of more than four years, since the entry was made and at the request of the present owner.

Property No. 7,111 which is mentioned in the inscription of the five lots in connection with the conditions is not related to property No. 69 from which the latter were segregated. It is a six-story building and lot situated on Georgetti Street in Río Piedras. The sixth inscription of that property reads in its pertinent part as follows:

"The Mercantile, Regular, and General Partnership 'Dávila y Llenza,' domiciled in Río Piedras, is the owner of this property according to the third inscription, and by deed number thirty-five executed in Río Piedras on the fifth day of March nineteen hundred and forty-eight, before Notary Edrulfo Astacio, Miguel Ángel Dávila, Charles Llenza, and Juan R. Dávila, of full age, married, without stating to whom, civil engineers and residents of Río Piedras, in their capacity as sole partners of the Mercantile Partnership 'Dávila y Llenza' and managing partners thereof, proceeded to liquidate and dissolve the same. It appears from said document that the liquidation of the property showed assets of four hundred nine thousand six hundred twenty-six dollars and twenty-six cents, and liabilities of two hundred forty-eight thousand three hundred sixty-four dollars and seventy cents. The capital amounted to one hundred sixty-one thousand three hundred twenty-one dollars and fifty-six cents, divided in a proportion of fifty-seven thousand three hundred sixty-seven dollars and seventy cents for partner Miguel Ángel Dávila, fifty-four thousand six hundred eighty-seven dollars and eighty cents for partners Juan R. Dávila, and forty-nine thousand two hundred sixty-six dollars and eight cents for partner Charles Llenza.—In the deed object of this registration the property bearing this number was awarded to partners Miguel Ángel Dávila and Juan R. Dávila, of full age, married, without stating to whom, civil engineers and residents of Río Piedras, in joint ownership and in a proportion of one half for each, with a value of ninety thousand five hundred eighty-one dollars and three cents.—It is understood and agreed between the appearing parties that the mortgage credits and collateral securities which encumber and affect the properties awarded shall be assumed, satisfied, and paid individually by the partner to whom the property so encumbered has been awarded. The appearing parties agree, *for the sole purpose of securing to Charles Llenza the payment of the debts and obligations*, that the six lots of Dávila

y Llenza Development described under letters 'B,' 'C,' 'D,' 'F,' 'G,' and 'I' of the second paragraph of the deed recorded, shall answer for the payment *of one third of the debts and liabilities of Mercantil Dávila y Llenza,* thereby constituting a collateral security which shall subsist until such time as the creditors are paid or until such time as such creditors accept any other security from Miguel Ángel Dávila and Juan R. Dávila. However, it is expressly agreed that the security stipulated hereinabove on the lots described in the second paragraph of the recital hereof shall not constitute a real charge on such lots, so that Miguel Ángel Dávila and Juan R. Dávila may sell, assign, and convey the said lots or any of them free from liens and give them as direct or collateral security to banking institutions, provided the proceeds of the operation carried out guarantee proportionally to Charles Llenza the payment of the debts and obligations referred to in that clause, on condition that in order to sell, assign, encumber, or mortgage these lots the consent of Charles Llenza shall be necessary in the sale or mortgage deed, which consent shall be limited to the application of the proceeds of the sale or mortgage to pay off solely and exclusively the debts mentioned hereinabove, it being further agreed that after the debts are paid off such consent shall not be necessary.— I therefore record in favor of Miguel Ángel Dávila and Juan R. Dávila the property bearing this number, in equal parts, by award and dissolution of the Mercantile Partnership, with the curable defect that the names of the purchasers' wives are not given." (Italics ours.)

On the margin of this inscription an attachment is entered in favor of The People of Puerto Rico for the payment of $12,585.96 of income taxes for the years 1940–45 and 1947–1948 as to the share of Juan R. Dávila. This entry is dated March 21, 1952. That attachment was cancelled on March 26, 1954, according to the tenth inscription. There is another entry on the margin of the eighth inscription to the effect that the agreement referred to in the sixth inscription had not been waived, modified, or limited as of April 9, 1956.

In an action of debt brought in the Ponce Part of the Superior Court, No. TS–52–378, by the Banco de Ponce, plaintiff, against Georgina Tirado widow of Dávila, Juan R.

Dávila, Margarita Príncipe, Dávila y Dávila, Inc., and the heirs of Miguel A. Dávila, judgment by default was rendered on May 18, 1953 which became final, ordering defendants to pay certain sums to plaintiff bank. The action was based on 22 promissory notes, some of which were secured by mortgage, some to the bearer and others to the order of the bank, which were obligations assumed by those defendants subsequent to the dissolution of the partnership Dávila y Llenza, were not derived from the operations of that mercantile partnership, and the mortgage securities did not include any of the five lots involved in the case before this Court. On July 15, 1953 an order of execution of judgment was issued on all the properties of defendants in that action. Said order of sale and execution provided as follows with respect to the properties not given as mortgage security of the notes: "LASTLY, THERE IS ORDERED the sale and execution of any other properties of defendants, except Commercial Acceptance Corporation, to cover and pay in full to plaintiff any deficiency or unpaid part of the judgment rendered in his favor for the amounts mentioned in the preceding first WHEREAS."

As a result of such order, on September 14 there were sold at public auction, among other properties, the five lots in litigation which were adjudicated to José Molina, and the corresponding deed of judicial sale was executed on October 21, 1953. Molina recorded his title on July 13, 1954 in the manner described hereinabove.

On December 22, 1955 Charles Llenza brought this action against the Banco de Ponce, José Molina, Manuela Nieves Molina, Juan R. Dávila, Margarita Príncipe, Georgina Tirado, and the heirs of Miguel A. Dávila, composed of Georgina Tirado, Miguel A. Dávila Tirado, and José Juan Dávila Tirado, praying for the following judicial pronouncements:

(a) To hold that the proceedings, execution, and other actions in the above-mentioned case TS–52–378 of the Ponce

Part, including the deed of judicial sale and its registration in the registry, are void as respects the five lots involved herein on the ground that plaintiff Llenza was not joined as a party defendant in those proceedings nor was notified of the auction sale, and ordering the cancellation of the corresponding registrations;

(b) To hold, in the alternative, that the condition and reservation in the deed of dissolution of the partnership constitute a condition subsequent which was expressly set forth in the registry of property and prejudiced a third party, decreeing consequently that the judicial actions taken in case TS–52–378 could not affect the rights of the interested party in such condition, and, therefore, that the judicial sale should be resolved and the registration thereof cancelled in the registry as respects the lots in question;

(c) To hold, if the court should conclude that none of the preceding pronouncements is proper, that the said five lots are subject to the condition mentioned and, hence, to the payment of one third of a certain income-tax debt, interest, and surcharges in favor of the Commonwealth of Puerto Rico and to order the registrar to enter a marginal note in the inscriptions made in favor of the purchaser at the sale, defendant Molina, that the said five lots are subject to the condition mentioned.

The Commonwealth of Puerto Rico moved for and obtained intervention in the action in connection with a tax debt of the dissolved corporation. It filed its complaint and by stipulation it also acquiesced in the other allegations of the original complaint as being in common with its allegations and prayed for judgment containing the following pronouncements:

"(a) To declare null and void the proceedings in case TS 52–378, including the deed of judicial sale and its registration

"(b) That the said lots be restored to defendants Juan R. Dávila and the heirs of Miguel A. Dávila, the same being subject to the condition precedent in favor of plaintiff Charles Llenza; and

"(c) In the event the foregoing pronouncements should not lie, that the court decree that such properties are the property of Molina, subject, however, to a tax debt of the partnership Dávila y Llenza and of its former partners Charles Llenza, Juan R. Dávila, and Miguel A. Dávila, now his heirs, which debt amounted on March 31, 1956 to $23,010.54, with interest thereon and surcharges until payment in full."

In its averments the Commonwealth took the position that these lots answered, not for one third of the tax debt as alleged in the original complaint, but for the totality thereof, on the ground that the three former partners of the mercantile partnership were solidarily liable for such debt.

In Llenza's complaint it was alleged that at that time the only outstanding debt of the dissolved partnership was an income-tax debt amounting to $22,647.96; that former partner Juan R. Dávila and the heirs of the former deceased partner were insolvent, and that the plaintiff's property risked being attached by the Secretary of the Treasury to collect such debt. In a supplemental allegation dated June 21, 1957, the plaintiff alleged that the Secretary of the Treasury had entered on May 15, 1956 attachments on two of his properties for the sum of $23,010.54 of income tax of the dissolved partnership.

Only the Banco de Ponce and the Molina spouses set up a defense. They denied the essential allegations, raised certain special defenses, and prayed for dismissal of the Commonwealth's petition for intervention for lack of cause of action, although they afterwards submitted the same subject to the same objections raised in the original complaint

and on the same evidence. It was stipulated to submit the case on the allegations and the documentary evidence.

On the basis of the facts set forth, the trial court rendered judgment containing the following pronouncements:

"1st. It is held that the actions taken in civil case No. TS–52–378 of the Superior Court of Puerto Rico, Ponce Part, brought by the Banco de Ponce against Georgina Tirado widow of Dávila, Juan R. Dávila, Margarita Príncipe, Dávila & Dávila, Inc., and the heirs of Miguel A. Dávila, consisting of his widow Georgina Tirado and his legitimate children José Juan and Miguel Angel Dávila Tirado, are null and void as respects the five lots object of this action which have been described at length in Finding of Fact No. 8; and that the auction sale at which the said lots were sold, the deed of judicial sale, and the registration of the latter in the registry of property are likewise null and void as respects the aforementioned five lots.

"2d. It is ordered that defendants José Molina and Manuela Nieves Molina return the said lots to Juan R. Dávila, married to Margarita Príncipe, and to Miguel Angel Dávila (now his heirs), married to Georgina Tirado, in order that the state of law existing at the time the Banco de Ponce brought such judicial action for collection of money be restored as to such properties.

"3d. It is ordered that there be cancelled in the Registry of Property of Puerto Rico, Section Two of San Juan, the inscriptions of such properties made in favor of José Molina, married to Manuela Nieves, by virtue of the deed of judicial sale which has been mentioned in the preceding Finding of Fact No. 21, namely, deed No. 87 executed in San Juan on October 21, 1953 before Notary Luis Ríos Algarín, to wit: of the second inscription of properties Nos. 718, 719, 720, 722, and 723, made at folios 141 reverse, 146 reverse, 153 reverse, 165 reverse, and 171 reverse of volume 247 of Río Piedras.

"4th. It is ordered that the state of law existing as to the said properties at the time the Banco de Ponce brought the said action for collection of money be restored in the said Registry of Property, and to that effect it is ordered that each and everyone of the five lots described in the preceding Finding of Fact No. 8 be recorded anew in favor of Juan R. Dávila and Miguel Angel Dávila, in common ownership and in equal parts, setting forth in the new registrations the same personal particulars and the same valuation appearing in the first inscription of each of the said real properties, and setting forth further that the same are recorded subject to the agreement on payment of the debt of the dissolved partnership 'Dávila y Llenza' appearing in the Eighth Clause of the Fourth Recital of deed No. 33, on Liquidation and Dissolution of Partnership, executed in Río Piedras on March 5, 1948 before Notary Edrulfo Astacio (preceding Finding of Fact No. 3), which is set forth at length in the sixth inscription of property No. 7,111 at folio 160, volume 195 of Río Piedras (preceding Finding of Fact No. 4).

"5th. It is ordered that codefendants Banco de Ponce, José Molina, and Manuela Nieves Molina pay solidarily to plaintiff Charles Llenza the amount of the internal-revenue stamps and other expenses incurred in the registration operations ordered in the preceding Third and Fourth pronouncements.

"6th. It is ordered that codefendants Juan R. Dávila, Margarita Príncipe, Georgina widow of Dávila, and the Heirs of Miguel Angel Dávila composed of Georgina Tirado widow of Dávila and Miguel Angel and Juan José Dávila Tirado, comply with the agreement on the payment of the debts of the dissolved partnership 'Dávila y Llenza' above referred to, and to make available and execute the necessary public or private instruments and request and procure the registrations in the registry which may be necessary to comply adequately with the said agreement.

"7th. The costs plus $1,300 for attorney's fees are taxed to defendants.

"In view of the pronouncements herein, no provision need be made with respect to the petitions for alternative reliefs made in their complaints by plaintiff Charles Llenza and by the intervener."

The foregoing pronouncements are consistent essentially, among many others, with these conclusions of law of the trial court, particularly Nos. 18 and 19:

"14. The five lots involved in this litigation constituted a special patrimony, provision being made for the disposition thereof, characterized by its fiduciary purpose; the Dávila purchasers could not claim the exclusive ownership thereof because those properties were conveyed to them subject to the limitations that they were to be applied exclusively to the payment of the partnership debts and that Charles Llenza's consent would be necessary in any contract of sale, encumbrance, or mortgage to be made; the character of the purchasers was rather that of fiduciaries, and this special disposition of the property and the said fiduciary relationship appearing clearly from the registry, the same could not be rendered ineffective without hearing the interested parties and prevailing at a trial (Resolutions of May 29, 1921 and June 14, 1922, and Judgment of the Supreme Court of Spain of May 23, 1935, 219 *Jurisp. Civil* 161, May and June 1935 (Editorial Reus, Madrid)).

"15. The fact that the Banco de Ponce was a creditor of Messrs. Dávila and that it sued them to foreclose the mortgage or to collect the money, does not make the position of that Banco superior to that of any other person who may have contracted directly with Messrs. Dávila, by purchasing the lots or acquiring any real right therein in violation of the agreement on the payment of the partnership debts, inasmuch as 'recorded titles shall produce their effects even against creditors specially preferred under the common law' (art. 24 of the Mortgage Law). The Banco did not enjoy any preference over the lots in litigation. On the contrary, the special disposition of the properties and the limitation of their ownership for the benefit of Charles Llenza and the partnership creditors had been recorded prior to the date of the oldest note issued by the Banco. Such regis-

tration was prejudicial to the latter and to José Molina and they can not allege immunity as third parties.

"16. The fact that the lots were sold at judicial sale and not at a voluntary sale executed by fiduciaries Dávila does not alter either the situation of the parties. Those properties were sold by the marshal of the Superior Court, San Juan Part, at the instance of the Banco de Ponce, by virtue of a deed of judicial sale at which that officer appeared in his capacity of marshal and in the name and on behalf of Juan R. Dávila and his wife Margarita Príncipe, Georgina Tirado widow of Dávila, and the Heirs of Miguel Ángel Dávila, etc., and a deed of sale executed by the judicial authority does not confer to the purchaser privileges or powers which exceed the common or usual powers of every sales contract (Judgment of the Supreme Court of Spain of December 26, 1910). At a judicial sale the defendant in the trial can not transmit to the purchaser any more rights than those which appear to be recorded in favor of the defendant in whose name the sale is executed (Resolution of July 13, 1933, 210 *Jurisp. Civil* 259, July to October 1933, Editorial Reus, Madrid; and Resolution of October 11, 1920). In this case the marshal could not transmit to José Molina, the purchaser at the public auction, any title or interest in the properties superior to those which defendants Dávila could have transmitted acting personally and voluntarily.

. . . . . . .

"18. The Superior Court of Puerto Rico, Ponce Part, acted without jurisdiction as respects the five lots involved in this litigation in the said civil case No. TS-52-378. Those lots were sold by the marshal 'without any reservation or limitation of any kind,' thereby extinguishing in the Registry of Property recorded rights in which persons or entities not joined as party defendants had an interest, who were not summoned at all and who did not have a day in court. The special disposition to which the properties were subject and the evident fiduciary relationship were also ignored. (Yet, everything indicates that the existence of the rights which in our opinion were ignored did not appear from the documentary evidence introduced in the Ponce Part.)

"19. Plaintiff Charles Llenza sustained damages and he has an interest and cause of action to seek the nullity of the actions involved in the instant case. He deprived himself of one third

of the value of the lots in depositing with Messrs. Dávila, in property, the amount of the debts and obligations of the dissolved partnership (§ 154 of the Code of Commerce, 1932 ed.), and if such debts and obligations are not paid off in the manner provided, the private property of Charles Llenza could be attached and executed by the creditors of the dissolved partnership in accordance with the solidary liability rule applicable to the general partners of a mercantile company (§ 104 of the Code of Commerce, 1932 ed.) ; and, as a matter of fact, some of the properties of the said plaintiff have been attached already by the Secretary of the Treasury for such purposes. The intervener, the Commonwealth of Puerto Rico, also has an interest and a cause of action to seek the nullity of actions in view of the fiduciary relationship established in its favor and of its income-tax credit.

"20. In view of the foregoing conclusions, the actions of the Ponce Part in civil case No. TS-52-378 as respects the five lots in litigation are null and void, and the auction sale, the award, the deed of judicial sale, and the registrations of the latter in the Registry of Property are all null and void as respects the properties in question."

Notwithstanding the amplitude of the reliefs sought and granted, the issues posed and discussed with their clear complexities at law, which in turn were the object of elaborate conclusions of law by the trial court, the rationale at bottom of this suit narrows down to a minimum, according to the facts in the record: that there was only one outstanding income-tax debt of the dissolved general mercantile partnership Dávila y Llenza, and that plaintiff Llenza was liable for an additional one third of such debt if the judicial reliefs sought were not granted. The action being reduced to its true expression, we turn to decide the same in this appeal. It is well to state that Messrs. Dávila did not perform any act in violation of the Eighth clause of dissolution which was copied at the commencement. They did not sell, assign, or convey the property, nor gave it as collateral security, nor encumbered or mortgaged the same without the knowledge nor without the consent of plaintiff Llenza. The latter's

controversy concerns third persons who were not a party in the execution of that clause.

■ We will dispose first of the Government's third-party complaint. In their fourth assignment defendants–appellants allege that the court erred in refusing to dismiss the third-party complaint. They are right. The third-party complaint should have been dismissed as a matter of law. Relying as it did on the said Eighth clause, the Government in its own right as a creditor, and no creditor, had a cause of action directly against the purchaser at the auction sale who acquired title to the properties. This is so because that clause did not guarantee the creditors of the partnership nor the debts. Giving it the fullest effect possible, and apart from considerations which the third mortgagor may have, the Eighth clause was executed by certain partners to *guarantee another partner* (not for the benefit of the creditors) in the discharge of the obligation to pay off the partnership debts in the particular manner agreed upon by them for the apportionment of the assets and liabilities. The fact that the purpose of this clause was to guarantee the partner, plaintiff herein, appears clearly from the registry, as respects third parties, from the lengthy recital of the conditions in the sixth inscription of property 7,111 which is copied above.

■■ The right of the creditors, the Government in this case, arises from and is thus guaranteed by § 104 of the Code of Commerce, 1932 ed., which imposes on all the partners of a general mercantile company the obligation to answer *solidarily* with all their property for the partnership debts. Although the partners may make covenants among themselves to be effective among them as respects the discharge of such obligation, wherefore it could not be said that the Eighth clause is in contravention of law, however, they may not make covenants in contravention of the provisions of § 104 as respects creditors and third parties because that is an obligation created by law. See § 1042 of the Civil

Code, 1930 ed. Recently we had occasion to discuss the solidary responsibility of the partners of a general mercantile company in *Vázquez v. H. Sánchez, S. en C., ante*, p. 542. We need not elaborate herein any further on this matter.

■■ Plaintiff Llenza and also the other former partners are by law *solidarily* liable to the State for the tax debt. The purchaser at an auction sale and present owner of the property is under no obligation at law to answer for this debt, unless the Government had entered an attachment on the auctioned properties.[1] According to the facts in the record, as a matter of fact the Government entered an attachment to collect said debt prior to the judicial sale on three of the five lots acquired by Molina. The writ of judicial sale did not contain any ruling on such encumbrances and Molina recorded his title subject thereto. He would have thus been liable, but the attachments were cancelled by reason of extinguishment without having been executed on the properties recorded and the property was free from such encumbrance. From the facts in the record, the intervener did not have at law a cause of action for any of the pronouncements sought against the purchaser at the auction sale: it did not derive rights from the *"pactum fiduciae"* of the partners; it was not a junior creditor according to the registry, and the judicial writ of sale did not deprive it either of the rights of attachment entered in its favor. And had there been a violation of the fiduciary covenant of the Eighth

---

[1] According to § 83 of the Income Tax Act of 1924 (No. 74 of August 6, 1925, Sess. Laws, p. 400), these income taxes constitute a first lien in favor of the State on the taxpayer's property from and after the date of publication of such taxes in the office of the collector of internal revenue, and shall be collected through the same summary proceedings provided for the collection of property taxes. Act No. 14 of August 24, 1933 (Sp. Sess. Laws, p. 76), as amended, provides in § 5 that the income taxes shall be collected through the summary proceeding provided for property taxes, but that the attachment levied shall have preference from the date of its registration in the registry and solely over liens and charges subsequent to said date. See § 423 (a) (2) of Act No. 91 of June 29, 1954 (Sess. Laws, p. 474).

clause, in such case the right to rescind the same was conferred by § 1077 of the Civil Code, 1930 ed., to plaintiff Llenza as settlor or the creditor of such covenant.[2] The motion to dismiss the third-party complaint for lack of cause of action should have been granted.

██ Let us turn to the original complaint. The foregoing disposes of it to a great extent also. Pursuant to the facts in the record, the pronouncement declaring null and void the actions in case TS–52–378 of Ponce and the resulting registrations in the registry does not lie. There is no reason at law why plaintiff Llenza should have been heard as a party in that suit or been notified personally of the auction sale, which action had nothing to do with the obligations of the dissolved partnership nor with the properties object of the Eighth clause. As a result of the writ of judicial sale those properties were comprised in the execution of the judgment, but the writ contained no provision against the rights that Llenza might have derived from the fiduciary covenant, nor did it provide anything against the registration of such rights in the inscription of property 7,111 or of the properties involved herein, in pursuance of the conditions on dissolution, regardless of the essence and nature of such registration or its effects on a third party.[3] In this connection

---

[2] "The right to rescind the obligations is considered as implied in mutual ones, in case one of the obligated persons does not comply with what is incumbent upon him.

"The person prejudiced may choose between exacting the fulfilment of the obligation or its rescission, with indemnity for damages and payment of interest in either case. He may also demand the rescission, even after having requested its fulfilment, should the latter appear impossible.

"The court shall order the rescission demanded, unless there are sufficient causes authorizing it to fix a period.

"This is understood without prejudice to the rights of third acquirers, in accordance with sections 1247 and 1250, and with the provisions of the mortgage law."

[3] So true is the fact that the registration in which Llenza was an interested party and made prior to the execution proceedings and to the registration of the title of the purchaser at the auction sale did not affect the sale, that the plaintiff himself introduced evidence—a certificate from

it has not been alleged nor established that the Ponce suit was the result of collusion, confabulation, or fraud, among the fiduciary, the former Dávila partners, and the plaintiff Banco therein for the purpose of prejudicing constituent Llenza.[4]

The other pronouncements of the judgment appealed from are the logical consequence of that which we have considered and, therefore, they are likewise untenable. The trial court made no pronouncement on the other two reliefs sought regarding the resolution of the judicial sale and the imposition in the registry of a lien on Molina's property by reason of the partnership tax debt. We already said that there was no violation here of the fiduciary covenant by the former Dávila partners, nor fraud or collusion with the Banco. Such reliefs involve, a fortiori, the condition of third party or not of acquirer Molina. Nor will this Court make any determination as respects such reliefs since they are not proper at this time, in view of the facts in the record and for the reasons which we turn to set forth.

■■ The situation of law of this case, according to the record, is governed fundamentally by the provisions of § 104 of the Code of Commerce, 1932 ed. The plaintiff is liable *solidarily* with the other partners for the debts of the dissolved partnership, in this case the tax debt. Regarding the creditors and third parties, he can not evade such *solidary* liability imposed on him by law through the fiduciary covenant, nor can he invoke this covenant, as respects creditors, in the discharge of such liability. That fact distinguishes the case at bar from other situations involving covenants of this nature, where properties in the hands of a fiduciary are

the registry—showing that such registration was in force on April 9, 1956, the date of the certificate. Nor was Llenza a junior creditor as respects the mortgages foreclosed in case TS-52-378. Arts. 125 of the Mortgage Law; 132(3), 171, and 174 of the Regulations.

[4] The complaint of the Banco de Ponce claimed a large sum and judgment was rendered for over $348,000.

attached for the payment of debts. It is also distinguishable from the situation treated in § 23 of the Mortgage Law dealing with the award of *hereditary* property with the obligation of applying its value to the payment of debts or charges against such inheritance.[5]

 It is alleged in the complaint that as a result of the proceedings had in the case before the Ponce Part the plaintiff might have to answer for an additional third part of the tax debt. His obligation to pay the full debt was not altered because by law he is bound to pay the same *solidarily* and not jointly with the former partners. The day this responsibility is discharged would be the time for recovering from his former partners under the fiduciary covenant, and if the latter should fail to pay, then it would be proper to consider and decide the liability of the third purchaser at the auction sale.[6]

---

[5] "The instruments mentioned in articles 2 and 5 which are not duly recorded or entered in the registry can not prejudice third persons.

. . . . . . . . .

"In the award of specific real property in an inheritance or general assignment to a participant, to a creditor or to a stranger with the obligation of applying its value to the payment of debts or charges against such inheritance or assignment, the condition under which the property is allotted shall be stated when recorded in the name of the person to whom the property has been awarded, and it shall have the effects which this law establishes in subdivision 1 of article 37."

Section 1599 of the Civil Code, 1930 ed., provides that the distribution among partners shall be governed by rules for inheritances, with regard to its form as well as to the *obligations* arising therefrom. However, § 104 of the Code of Commerce prevails as respects the solidary nature of the obligation of the partners for the partnership debts in general mercantile companies.

[6] The Court does not fail to appreciate in full the study made by the distinguished legal representatives of one party as well as of the other, to enlighten it on the difficult questions raised and discussed on the essence and nature of the Eighth clause in its dual conveyance and compulsory aspect as respects the third-party mortgagee and on other related particulars which are equally of fundamental importance. In consonance with the judicial function of deciding controversies, which is distinguishable from that of the law textwriter or commentator, we shall make no pronouncements on such aspects, no matter how important for the doctrine, such issue not having ripened in the facts.

In view of the foregoing, the judgment appealed from will be reversed and another judgment rendered (1) dismissing the original complaint, with costs on plaintiff including the costs of appeal, and $1,000 for attorney's fees before the trial court; (2) dismissing the third-party complaint filed by the Commonwealth.